```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CHANNEL FABRICS, INC.,                                      :
                                                            :
                              Plaintiff,                    :      11 Civ. 3483 (JPO)
                                                            :
              -against-                                     :      MEMORANDUM AND
                                                            :            ORDER
HARTFORD FIRE INSURANCE COMPANY,                            :
                                                            :
                              Defendant.                    :
------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

Plaintiff Channel Fabrics, Inc. ("Channel Fabrics") brings this action for breach of contract and a declaratory judgment against Hartford Fire Insurance Company ("Hartford"), alleging that Hartford improperly denied Channel Fabrics' insurance claim. The parties cross-move for partial summary judgment on the issue of liability. Specifically, the parties seek a determination of whether Channel Fabrics' claim is covered, and not otherwise excluded, by the policy at issue. For the reasons that follow, Plaintiff's motion for partial summary judgment is denied, and Defendant's motion for partial summary judgment is granted in part and denied in part.

**I.      Factual Background**

The facts in this case are undisputed, and the following factual summary is based on a stipulation entered into by the parties and the documents attached to that stipulation. (*See* Stipulated Statement of Material Facts for Purposes of Partial Summary Judgment, Dkt. No. 18-1 ("Stip.").)

Channel Fabrics is a New York corporation engaged in the business of textile shipping. Hartford is a foreign corporation authorized to conduct the business of insurance in New York.

In 2009, Channel purchased an "All Risk" Ocean Cargo Choice insurance policy from Hartford, effective from June 9, 2009 to June 9, 2010 (the "Policy"). (*See* Stip. Ex. A.)

A.  **The Policy**

Pursuant to Clause 1, entitled "Goods Insured & Interest Clause," the Policy insures "All shipments of lawful goods, freight and merchandise of every kind and description, except as excluded, vessel lost or not lost, under or on deck, for which the Assured has an insurable interest." (Policy at 19.[1])

Clause 2 of the Policy states that "insured property is held covered when transported by the following conveyances, including connecting conveyances, within the respective geographic limitations, for which an applicable limit of insurance is stated in the Schedule for . . . metal self-propelled surface vessels/steamers between ports and/or places in the world . . . ." (*Id.*) The Schedule of Coverages and Limits states that Hartford's liability is limited to $300,000 with respect to property insured per any one metal self-propelled vessel. The Policy sets a deductible of $1,000 for any loss, except that this deductible is waived in the event of a total loss. (*Id.* at 06.)

Clause 3 of the policy, which sets forth the duration of the risk for insured property shipments, states that

> This insurance attaches from the time the insured property leaves the warehouse/store or other place or origin, or is delivered alongside or on board the overseas conveyance in accordance with the obligation of the Assured under the terms of sale, for the commencement of transit, prior to expiration or cancellation of this policy, and continues until the first occurs:
>
> (1)  Insured property is delivered to the Consignee's or other final warehouse/store or place for storage at the intended destination . . . .

---

[1] The Policy is paginated with Bates Stamps reading "HARTFORD-CF-[number]," beginning with HARTFORD-CF-000001. For the sake of simplicity, the Court will refer to specific pages in the policy with the last two digits of the Bates number.

(*Id.* at 19.)

    The policy provides "all risk" coverage to insured property as follows.

> 13.   PERILS, TERMS OF AVERAGE & RISKS INSURED AGAINST
>
> The following average terms shall apply
>
> a.   All Risk:  Unless otherwise specified below, this policy insures against "All Risks" of physical loss or damage from any external cause irrespective of percentage, but excluding nevertheless the risks excluded by the policy, and of War, Strikes, Riots, Seizure, Detention and other risks excluded by the Nuclear/Radioactive Contamination Exclusions Clause, the F.C. & S. (Free of Capture and Seizure) Warranty and the S.R. & C.C. (Strikes, Riots and Civil Commotions) Warranty of this policy, excepting to the extent that such risks are specifically covered by an additional coverage or endorsement.

(*Id.* at 22.)

    The Policy also sets forth certain exclusions from coverage.  Relevant to this lawsuit, under the heading "Basic Exclusions," the Policy states that "[t]he following exclusions shall apply unless modified or superseded elsewhere herein or endorsed hereon.  This policy does not cover: . . . . b. Loss, damage, or expense: . . . Loss of use or market, interruption or business, or consequential loss of any nature.  Spoilage is not a consequential loss."  (*Id.*)

    Clause 15 of the Policy, entitled "Paramount Warranties," also excludes certain enumerated risks from the Policy's coverage.  Relevant to this lawsuit, the Policy provides:

> Subject to the following Paramount Warranties which shall not be modified or superseded by any other provision included herein or stamped or endorsed hereon unless such other provision refers specifically to the risks excluded by these Warranties and expressly assumes the said risks:
> . . .
> c. Delay Warranty:  Warranted free of claim for loss of market or for loss, damage, expense or deterioration arising from delay, whether caused by a peril insured against or otherwise.

3

(*Id.* at 22-23.)  This "Delay Warranty" is modified by the "Transit Clause," which provides, "This insurance specially to cover the insured property during deviation, delay, forced discharge, reshipment, transshipment and any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment." (*Id.* at 20.)

The Policy contained a clause requiring the insured party to mitigate damages from covered losses:  "In the event of loss or misfortune, it is the duty of the Assured . . . to take all reasonable measures to avert or minimize loss insured against by this policy and to ensure that all rights against third parties are preserved and exercised." (*Id.* at 25.)

The clause at the center of this dispute is Clause 9, the "Non-Delivery Clause," which provides, "If the property insured does not arrive at the intended destination within fifteen (15) days of the expected arrival date, the Assured may make claim on the basis that the property insured is deemed lost in transit." (*Id.* at 21.)

### B. The Shipment and the Claim

On or about April 15, 2010, Channel Fabrics shipped a number of bales of woven fabric from Shanghai, China to a buyer located in Guatemala aboard the vessel Maruba Angol, with an expected arrival in Puerto Quetazal, Guatemala, twenty-seven days later, on or about May 12, 2010.  The shipment did not arrive at the destination on May 12, 2010, and in fact did not arrive until June 8, 2010.  According to Channel Fabrics, a portion of the fabric arrived in a damaged state.

Sometime before June 8, 2010, Channel provided notice to Hartford of its claim for the shipment (which, at the time, was yet to arrive) pursuant to Clause 9, the Non-Delivery Clause, of the Policy.  Hartford acknowledged receipt of the claim in writing the following day.

On June 9, 2010, after the ship had arrived, a representative of Channel Fabrics sent an email to a representative of Hartford stating, "As we discussed we will not know the full cost of the damages for approximately 90 days as we work to mitigate the damages with our customers. Please confirm this is the correct protocol and procedure we should be following as we have never encountered a situation such as this before."  (Stip. Ex. D.)  A representative from Hartford responded, "You are doing the right thing by mitigating any loss or damage . . . .  I have received some documents and will review within the next week or so and follow up with a status letter."  (*Id.*)

In what Channel Fabrics describes as an effort to mitigate the damages, Channel Fabrics sold the fabric to the buyers for an amount less than the pre-arranged sale price.

Over the next few months, Hartford requested and received certain documents from Channel Fabrics as Hartford investigated Channel Fabrics' claim.  In many of the emails between the parties, Hartford noted that it was "reserv[ing] all of its rights under its policy(s)." (Stip. Exs. F, G, H.)  During the course of the investigation, Channel Fabrics informed Hartford that it had learned that some of the fabric in the shipment had been damaged.

On September 16, 2010, in response to requests from Hartford for a "[d]etailed, written claim statement advising the amount being claimed" (Stip. Exs. G, H), Channel Fabrics submitted a chart purporting to break down "the loss and damages that [Channel Fabrics] incurred from the shipments made on the Maruba Angol Vessel."  (Stip. Ex. I.)  That chart shows a total loss from the discount provided to the buyer of $156,827.88 on the sale of 290,422 yards of fabric.  The chart also lists an "Air Cost" of $22,076.25 and a "Fabric Cost" of $12,262.56 pertaining to 7,953 yards of fabric.[2]  The total loss claimed was $191,166.69.

---

[2] Presumably, the "Air Cost" and "Fabric Cost" were incurred in the course of purchasing and shipping fabric to replace the portion that was damaged during the shipment, but the record is not completely clear on this fact.

5

On September 22, 2010, Hartford sent Channel Fabrics a letter stating that the claim was being denied because the "claim for the discounts offered to you [*sic*] customers is considered a consequential loss.  Furthermore, the damage to the slate fabric was caused by the delay, which is also excluded."  (Stip. Ex. B.)  The letter excerpted the portions of the policy concerning the "Basic Exclusion" for "consequential loss" and the "Delay Warranty."  (*Id.*)

Channel Fabrics now brings this suit, alleging that it "provided timely Notice of Loss to Hartford Insurance of its claim that the Shipment was lost in transit pursuant to paragraph 9 of the insuring agreement of the Policy and was damaged."  (Complaint, Dkt. No. 1, ("Comp.")  ¶ 13.)

## II.   Discussion

### A.   Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009).  A "material" fact is one that might "affect the outcome of the suit under the governing law."  *Id*.  The moving party bears "the burden of demonstrating that no material fact exists."  *Miner v. Clinton Cnty., New York*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

In resolving this inquiry, the Court must construe "the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in that party's favor."  *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 247-50, 255 (1986)); *see also Treglia v. Town of Manlius*, 313 F.3d 713, 718 (2d Cir. 2002).

"A court faced with cross-motions for summary judgment need not 'grant judgment as a matter of law for one side or the other,' but 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'" *Cariou v. Prince*, 784 F. Supp. 2d 337, 345 (S.D.N.Y. 2011) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993)).

  B.  **Applicable Law**

    1.  **Interpreting Insurance Policies Under New York Law**

  The parties agree that "[t]he construction of an insurance contract is ordinarily a matter of law to be determined by the court." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 180 (S.D.N.Y. 2003); *see also Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006) ("[T]he initial interpretation of a contract is a matter of law for the court to decide." (citation omitted)). "In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent purpose which the parties sought to accomplish." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)); *see also Morgan Stanley Group Inc. v. New England Ins. Co.*, 225 F.3d 270, 275 (2d Cir. 2000) ("Under New York law, an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." (citation and quotation marks omitted)).

  Under New York law, an insurance contract must be interpreted so that a clear and unambiguous policy provision is given its plain and ordinary meaning. *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009). Thus, "where the language is

unambiguous . . . the district court [may] construe it as a matter of law and grant summary judgment accordingly." *Palmieri*, 445 F.3d at 187 (citation omitted). However, if language in the policy is ambiguous, New York law provides that such ambiguities must be construed in favor of the insured and against the insurer. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 201 (2d Cir. 2010) (citations omitted); *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 615 (2d Cir. 2001) ("As to this inquiry, we are guided by New York's well-established *contra proferentem* rule, pursuant to which unresolvable ambiguities in insurance contracts are construed in favor of the insured." (citing *Handelsman v. Sea Ins. Co.*, 85 N.Y.2d 96, 623 N.Y.S.2d 750, 647 N.E.2d 1258, 1260 (1994) ("Where there is ambiguity as to the existence of coverage, doubt is to be resolved in favor of the insured and against the insurer."))).

Whether a contract is ambiguous is a "threshold question of law to be determined by the court." *Parks Real Estate*, 472 F.3d at 42 (citation omitted); *see also Duane Reade*, 600 F.3d at 201. "Language in an insurance contract will be deemed ambiguous if reasonable minds could differ as to its meaning." *Haber v. St. Paul Guardian Ins. Co.*, 137 F.3d 691, 695 (2d Cir. 1998); *see also United States Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569, 572 (2d Cir. 1991) ("As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading."). The Second Circuit has explained that "[a]n ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley*, 225 F.3d at 275 (quoting *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)).

However, "ambiguity does not exist simply because the parties urge different interpretations." *Hugo Boss Fashions*, 252 F.3d at 617 (citations omitted).

If the language in an insurance policy is ambiguous, the court should examine the language "from the vantage point of the 'reasonable expectations and purposes of the ordinary person." *Haber*, 137 F.3d at 695 (citation and quotation marks omitted). The court may also "consider extrinsic evidence submitted by the parties to assist in determining their actual intent." *McCostis v. Home Ins. Co. of Indiana*, 31 F.3d 110, 112-13 (2d Cir. 1994) (citations omitted). "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured." *Id.* (citations omitted). "This rule gains added force when ambiguities are found in an exclusionary clause." *Haber*, 137 F.3d at 698 (citation omitted).

### 2. "All-Risk" Policies: Burdens of Proof

The Policy at issue here is an "all-risk" insurance policy. "Under an all-risk policy, losses caused by *any* fortuitous peril not specifically excluded under the policy will be covered." *Parks Real Estate*, 472 F.3d at 41 (citation omitted).

An insured making a claim under an all-risk policy has the initial burden to establish a *prima facie* case for recovery. An insured meets this burden by showing: "(1) the existence of an all-risk policy, (2) an insurable interest in the subject of the insurance contract, and (3) the fortuitous loss of the covered property." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002) (citation omitted); *see also Jomark Textiles, Inc. v. Int'l Fire & Marine Ins. Co.*, 771 F. Supp. 577, 579 (S.D.N.Y. 1989) ("Under an all risks policy, the insured has the burden of establishing a *prima facie* case for recovery by proving the existence of the all

risks policy, and the loss of the covered property."). This burden has been characterized as "relatively light." *Int'l Multifoods*, 309 F.3d at 83. The Second Circuit has explained:

> All risk coverage covers all losses which are fortuitous no matter what caused the loss, including the insured's negligence, unless the insured expressly advises otherwise. A loss is fortuitous unless it results from an inherent defect, ordinary wear and tear, or intentional misconduct of the insured. An insured satisfies its burden of proving that its loss resulted from an insured peril if the cargo was damaged while the policy was in force and the loss was fortuitous. . . . All risk open cargo policies . . . provide broad coverage for shippers.

*Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 307-08 (2d Cir. 1987). Thus, an insured need only show fortuitous loss, and "need not explain the precise cause of the loss." *Int'l Multifoods*, 309 F.3d at 84 (citing *In re Balfour MacLaine Int'l Ltd.*, 85 F.3d 68, 77-78 (2d Cir. 1996)).

Once an insured has met its burden of establishing a *prima facie* case, the burden shifts to the insurer to establish that an exclusion or exception to coverage applies. *Jomark Textiles*, 771 F. Supp. at 579. The insurer's burden is a "heavy one." *Parks Real Estate*, 472 F.2d at 42 (quoting *Pepsico, Inc. v. Winterthur Int'l Am. Ins. Co.*, 13 A.D.3d 599, 600, 788 N.Y.S.2d 142, 144 (2d Dep't 2004)). To "negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case and that its interpretation of the exclusion is the only construction that [could] fairly be placed thereon." *Id.* (quoting *Throgs Neck Bagels, Inc. v. GA Ins. Co. of N.Y.*, 241 A.D.2d 66, 671 N.Y.S.2d 66, 68-69 (1st Dep't 1998)). And as with other provisions of an insurance contract, ambiguities must be resolved in favor of the insured and against the insurer. *Id.*

    **B.**    **Application of Law to Facts**

        **1.**    **Prima Facie Case Under the All Risk Policy**

The all-risk policy here provides for coverage against "'All Risks' of physical loss or damage from any external cause irrespective of percentage, but excluding nevertheless the risks excluded by this policy . . . ."  (Policy at 22.)  Channel Fabrics contends that it has met its *prima facie* burden because the existence of the "all-risk" policy is undisputed, and Channel Fabrics experienced a fortuitous loss of property covered by the policy.  Hartford argues that Channel Fabrics has failed to meet this burden.  In particular, Hartford argues that Channel Fabrics has failed to establish that the covered property experienced "physical loss or damage."  Channel Fabrics asserts that it has effectively experienced a total loss of the shipment pursuant to Clause 9 (the "Non-Delivery Clause") of the Policy.  Specifically, Channel Fabrics asserts that, since the shipment "d[id] not arrive at the intended destination within fifteen (15) days of the expected arrival date," it was "deemed lost in transit," and was therefore a total loss.  (Policy at 21.)

The Court disagrees with Plaintiff's reading of the "Non-Delivery Clause."  That Clause states, in its entirety:  "If the property insured does not arrive at the intended destination within fifteen (15) days of the expected arrival date, the Assured *may make claim* on the basis that the property insured is deemed lost in transit."  (*Id.* (emphasis added).)  Hartford argues that this does not amount to an independent grant of insurance coverage, and the Court agrees.  Although it is possible that Channel Fabrics can meet its burden to make a *prima facie* case for coverage under the Policy notwithstanding the Court's conclusion, the record is not sufficiently clear for the Court to rule on this issue as a matter of law.  Accordingly, Plaintiff's motion for partial summary judgment is denied.

### a. The Court's Construction of the Non-Delivery Clause

It is axiomatic that the right to "make claim" under an insurance policy does not equate to a right to have that claim approved and paid in full.[3]  Indeed, the Policy itself states that "[i]n case of loss, such loss [is] to be paid . . . *after satisfactory proof of loss* and satisfactory proof of interest in the insured property has been established by the Company."  (Policy at 33 (emphasis added).)  Simply "mak[ing] claim" does not guarantee that the insurer will find that the loss is covered under the Policy.  Instead, the Non-Delivery Clause allows a policyholder to assert a claim for a lost shipment when a shipment is more than fifteen days late, rather than waiting until the ship itself is found at the bottom of the ocean (or for some other indefinite period of time).  But, contrary to Plaintiff's argument, the clause does not provide separate "coverage" under which the insured may make a claim.

Channel Fabrics argues that, even if the Non-Delivery Clause does not unambiguously provide coverage for the loss in this case, the clause is ambiguous and therefore must be construed in favor of the insured, Channel Fabrics.  The ambiguity potentially arises through the use of the phrase "on the basis that the property insured is deemed lost in transit."  The Court agrees with Defendant that the only reasonable reading of this provision is that the insured may make the claim *as if* the ship were lost in transit.  Presumably, if the ship ultimately did arrive (as it did in this case) then the insured would not reasonably expect to be compensated for a lost ship that is not, in fact, lost.  But it is also possible, as a grammatical matter, to read the sentence as providing that the insured may make a claim *because* the ship is deemed lost in transit.  In other

---

[3] Hartford cites a decision from the New Mexico Court of Appeals that distinguished between "the ability to make a claim" and whether "the claim itself will pass legal muster."  (Def. Opp. at 11 (*King v. Allstate Ins. Co.*, 159 P.3d 261, 265, 2007 NMCA 44 (N.M. Ct. App. 2007).)  Hartford does not cite any law from this state or this Circuit on this point, and Channel Fabrics argues that the New Mexico case is inapposite for various reasons.  However, the difference between a right to "make claim" and the ultimate success of such a claim is sufficiently plain that the Court need not rely on this authority one way or the other.

words, once a ship is more than fifteen days late, it is deemed lost in transit for all purposes. If the ship did ultimately show up, then the insured would have a duty under the policy to mitigate damages, but would otherwise retain its claim as if the ship remained lost in transit.

The Second Circuit has explained that "under New York law, ambiguity does not exist simply because the parties urge different interpretations." *Hugo Boss Fashions*, 252 F.3d at 616 (citations omitted); *see also Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 27 (2d Cir. 1988) (noting that "a mere assertion by one of the parties that a clause is ambiguous would not prevent summary judgment"). Although the Non-Delivery Clause is technically capable of two different meanings, the Court holds that it is not "*reasonably* susceptible" of both readings, *United States Fire Ins. Co.*, 949 F.2d at 572 (emphasis added), particularly when read objectively from the perspective of "a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Morgan Stanley*, 225 F.3d at 275.

The Court concludes that, in the context of the Policy as a whole, the Non-Delivery Clause unambiguously provides for the timing for *making* a claim when a ship does not arrive on the expected date, but it does not provide that once a ship is more than fifteen days late, the ship is thereby deemed lost in transit regardless of what happens later. The plain language of the clause provides that the insured may "make claim" on a particular basis, but does not provide that if a shipment is more than fifteen days late, then, without qualification, it is deemed lost in transit, as Plaintiff urges. Under Plaintiff's reading of the language, the Policy essentially becomes insurance for significant delay in the arrival of a ship. (For example, if a ship that was deemed lost in transit arrived twenty days late completely intact, then the only loss that an insured could experience would be from the delayed arrival.) But this is not a policy covering

delay. On the contrary, the Policy expressly excludes from coverage "loss, damage, expense or deterioration arising from delay, whether caused by a peril insured against or otherwise." (Policy at 23.) And the Delay Warranty "shall not be modified or superseded by any other provisions" of the Policy, "unless such other provision refers specifically" to that risk. (*Id*. at 22.) In short, Plaintiff's reading of the Non-Delivery Clause is inconsistent with the apparent purpose of the Policy as a whole.[4]

Because the Court holds that this provision is not ambiguous, it is not necessary to "consider extrinsic evidence submitted by the parties to assist in determining their actual intent." *McCostis*, 31 F.3d at 113. Nevertheless, the extrinsic evidence submitted by Plaintiff serves to confirm the Court's reading of the Policy. In particular, Channel Fabrics points to a "Coverage Analyzer" available on Hartford's website for its Ocean Cargo Choice policy, which includes a chart explaining the Non-Delivery Clause. Under the column headed "Risk of Loss," there is a chart entry for "Non-Delivery." In the same row, under the column headed "Analysis Tip," the website states "When an entire shipment goes missing, some insurance companies may make a Policyholder wait for an indefinite period of time before *accepting a claim* for theft or loss in transit." (Pl. Mem. at 12 (emphasis added).) Next to that, under the column headed "The Hartford Solution," it states "The Hartford will *accept claims* for missing cargo if a shipment doesn't arrive within 15 days of the expected arrival date." (*Id.* (emphasis added).)[5] This

---

[4] It is also worth noting that, unlike the "All-Risk" provision, the Basic Exclusions, and the Paramount Warranties, the Non-Delivery Clause does not appear in the section headed "Perils Insured," which sets forth what is covered and what is excluded under the Policy. Rather, it appears in the first section, headed "Insured Property," which contains more general provisions.

[5] Channel Fabrics asks the Court to take judicial notice of this website material, and provides an Internet address, stating that the site was last visited in November 2011. However, when the Court attempted to view this material on the Internet, it was unable to reach that particular document. In any event, because the parties do not dispute that Plaintiff has accurately excerpted this material (and that it was available at the time that the parties entered into their contract), the Court will assume, for purposes of this motion, that the quotes are accurate. Moreover, as previously explained, because the Court concludes that the plain language of the Policy is not ambiguous, extrinsic evidence is not required to construe the language of the Policy.

14

language even more unambiguously suggests that the Non-Delivery clause refers to the timing for the acceptance of claims, and is not a separate grant of coverage that deems lost at sea any shipment that is more than fifteen days late.  If the shipment never arrives, then the insured has the advantage of his claim already being in process as early as fifteen days after the expected arrival date.  But if the ship does show up (albeit late), there is nothing to suggest that the Policy would still process the insured's claim as if the ship had disappeared entirely.  Once a shipment actually arrives it is, by definition, and in fact, not "lost in transit" or "missing cargo."  Thus, in that situation, a claim based upon the premise that the ship never arrived would presumably be denied.

Channel Fabrics argues that this reading of the Non-Delivery Clause renders the coverage of the Policy "illusory," which is prohibited by New York law.  (*See* Pl. Mem. at 17 (citing *Thomas J. Lipton, Inc. v. Liberty Mut. Ins. Co.*, 34 N.Y.2d 356, 361, 314 N.E.2d 37 (1974)).  But this is plainly not the case.  If a shipment has not yet arrived, then the insured may make a claim for losses pursuant to the "all risk" coverage.  Under the Non-Delivery Clause, that claim may be made any time after fifteen days from the expected arrival date.  If, in fact, the shipment never arrives, then the claim would presumably be approved as a total loss.  But if the ship does arrive, then only the losses actually covered by the Policy would be approved and paid.

### b.  Channel Fabrics' Losses Under the All Risk Coverage

The Court's conclusion as to the Non-Delivery Clause does not mean that Channel Fabrics claim must be denied in full.  Indeed, it is not disputed that Channel Fabrics did experience losses in connection with the shipment at issue, although the record is not clear on the extent to which those losses constitute "physical loss or damage" pursuant to the "all-risk" coverage of the Policy.  The Second Circuit has defined "physical loss or damage" in the

insurance context as "strongly impl[ying] that there was an initial satisfactory state that was changed into an unsatisfactory state." *City of Burlington v. Indem. Ins. Co. of N. Am.*, 332 F.3d 38, 44 (2d Cir. 2003) (citations and ellipses removed) (applying Vermont Law, but collecting cases from various jurisdictions applying this definition, and noting that the court was "aware of no cases adopting a contrary interpretation of the term"). The record does not contain sufficient evidence on the "initial satisfactory state," or the later "unsatisfactory state," to rule on this issue as a matter of law.

Second Circuit case law suggests that coverage for "physical loss" would not extend to shipments that are merely delayed. In *International Multifoods*, the court addressed whether a plaintiff experienced "loss" under a policy with similar language. 309 F.3d at 84. In that case, a shipment of chicken and meat products was temporarily seized by Russian authorities in connection with a criminal investigation of a different shipper. The plaintiff never recovered the shipment. The court noted that "the mere seizure of the goods would not by itself have constituted a 'loss' triggering coverage under the . . . Policy in the sense that coverage obviously would not have been triggered if the cargo had been returned to [the plaintiff] the day after the seizure at little or not cost to [the plaintiff]." *Id.*

In accordance with the Second Circuit's reasoning in *International Multifoods*, the Court holds that delay alone likely does not constitute "physical loss or damage" to the shipment. However, the Court need not resolve this issue, as, even assuming *arguendo* that the losses due to delay were covered by the "all-risks" coverage, those losses are expressly excluded by other provisions in the Policy.

    **2.**    **Exclusions**

Hartford argues that even if Channel Fabrics can meet its *prima facie* burden, most of Channel Fabrics' claimed losses are excluded under either two separate provisions of the Policy—the "Delay Warranty" and the "Basic Exclusion" for "loss, damage or expense . . . loss of use or market, interruption of business, or consequential loss of any nature." (Policy at 22.) Hartford moves for partial summary judgment dismissing that portion of Channel Fabrics' claim representing these excluded losses, specifically the $156,827.88 discount extended by Channel Fabrics to its buyer. The Court agrees that the Policy unambiguously excludes losses caused by delay. *See Blaine Richards & Co., Inc. v. Marine Indem. Ins. Co. of Am.*, 635 F.2d 1051, 1056 (2d Cir. 1980) (holding that nearly identical policy language provides that there could be no recovery if the loss to the plaintiff was "attributable solely to delay," because "recovery for delay . . . [was] barred by . . . the . . . Delay Clauses"). However, because the record is not clear on exactly how much of the loss is due to these excluded causes, the Court grants Hartford's motion in part and denies it in part.

There can be little doubt that the all-risk coverage is subject to the exclusions. (*See* Policy at 22 ("Unless otherwise specified below, this policy insures against 'All Risks' of physical loss or damage from any external cause irrespective of percentage, but excluding nevertheless the risks excluded by the policy . . . .").) The Policy provides that the "Basic Exclusions" "shall apply unless modified or superseded elsewhere herein or endorsed hereon." (*Id.*) And the "Paramount Warranties" "shall not be modified or superseded by any other provisions included herein or stamped or endorsed hereon unless such other provisions refers

specifically to the risks excluded by these Warranties and expressly assumes the said risks." (*Id.*)[6]

In order to establish that a claim is subject to an exclusion, "the insurer must show that the loss was proximately caused by the excluded peril." *Great Neck Ins. Co. v. DAyco Corp.*, 637 F. Supp. 765, 777 (S.D.N.Y. 1986). Thus, to the extent that Channel Fabrics' losses were proximately caused by delay, or constitute consequential losses, they would be excluded. Hartford argues that "[i]t is undisputed that a significant portion of the damages sought by Channel Fabrics in this case—$156,827.88—result not from a physical loss or damage, but instead solely from Channel Fabrics selling 'the [Shipment] to the buyers for an amount that was substantially less than the pre-arranged sale price' due to the Shipment's delayed arrival." (Def. Opp. at 16 (quoting Pl. Mem. at 6).) But the record is not so clear.

The record shows that Channel Fabrics' claim comprised a "Total Discount" of $156,827.88 for approximately 290,000 yards of fabric, and a "Fabric Cost" of $12,262.56 and an "Air Cost" of $22,076.25 for approximately 8,000 yards of fabric. (*See* Stip. Ex. I.) But this evidence does not establish as a matter of law what the actual proximate cause of the losses was. The record shows that at least some portion of the fabric shipment was purportedly physically damaged. (*See* Stip. Exs. D, E.) But it is not clear exactly how the claimed costs are allocated between physical damage and mere delay. It is possible, for example, that the discount was because of a combination of delay and the fact that the shipment was damaged.

To be sure, Channel Fabrics has consistently asserted its claim under the "Non-Delivery Clause," on the basis that the greater-than-fifteen-day delay meant that the shipment was effectively lost in transit, and not on the basis that the shipment was physically damaged. This

---

[6] The parties do not dispute that Clause 3.b of the Policy does modify the Delay Warranty, but also do not dispute that that clause does not apply in this case.

suggests that the proximate cause of Channel Fabrics' losses was the delay. And the breakdown of the claim suggests that the discount was applied only to the undamaged bales of fabric. To the extent that that is the case, the portion of Channel Fabrics' losses attributable to the delay would be excluded under the Policy. But at this stage of the litigation, it is not clear how much of those claimed losses fall under this exclusion.

### IV. Conclusion

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED. Defendant's cross-motion for summary judgment is GRANTED in part and DENIED in part. Defendant's motion is granted insofar as the Court concludes that the Non-Delivery Clause does not provide that Defendant will approve claims for a shipment that arrives more than fifteen days late as if that ship were lost in transit. Defendant's motion is also granted insofar as the Court concludes that any claimed losses that are due to delay, or are consequential losses, are excluded under the Policy. Defendant's motion is denied insofar as the record is not clear on the amount of Plaintiff's losses that would fall under those exclusions.

SO ORDERED.

Dated: New York, New York
August 13, 2012

_____
J. PAUL OETKEN
United States District Judge